## GILLESPIE v. BLOOD.

No. 4694. Decided December 30, 1932. (17 P. [2d] 822.)

*Leslie Frazer,* of Salt Lake City, for appellant.

*Fabian & Clendenin,* of Salt Lake City, for respondent.

WATKINS, District Judge.

The plaintiff, Gillespie, brought this action against the defendant to recover two real estate bonds of the Detweiler Corporation, or their value in money, which he had exchanged for fifteen shares of stock of the Guaranteed Securities Company. The complaint contains two causes of action.

In the first cause it is set forth, in substance, that on the 21st day of February, 1924, at Los Angeles, state of California, the defendant company, a Utah corporation, through its agent, J. J. Morey, sold to the plaintiff fifteen shares of its capital stock of the par value of $100 per share in exchange for two bonds of the Detweiler Corporation; it being agreed that at the time the bonds were of the value of $1,500. It is also alleged that the sale of the stock was made in violation of the Corporate Securities Act of the State of California, the defendant company not having a permit from the commissioner of corporations of that state to sell its stock at the time and place of sale. A copy of the California law, which it is alleged the defendant violated, is attached to the complaint. It is also alleged that the sale is void because of violation of the law. Plaintiff further alleges that on the 24th day of April, 1925, he rescinded said sale, notified defendant of said rescission, and offered to return to defendant said fifteen shares of stock and demanded the return of the consideration he had given for the stock. Refusal of the defendant to comply is also alleged. The plaintiff prays for

restitution of the Detweiler bonds together with interest collected thereon, or, in the event of failure or inability of the defendant to return said bonds, for a judgment against said defendant to return said bonds or for a judgment against said defendant for $1,500 and interest at 8 per cent per annum on the said sum from the 28th day of February, 1924.

Plaintiff's second cause of action is based on alleged false and fraudulent representations as to the value of the capital stock of the Guaranteed Securities Company. It seeks to rescind the transaction on the grounds of fraud. All necessary paragraphs of the first cause of action are incorporated by reference. The prayer is the same as to the first cause of action. Further details of the second cause of action are not set forth here for reasons that will become apparent.

To the complaint, the defendant J. J. Morey filed separate answer in which he admits the corporate existence of the defendant company, and that he was its president and general manager. Other matters he denied generally.

George H. Blood, receiver of the Guaranteed Securities Company, was by order of the court on February 10, 1926, substituted as defendant in place of the Guaranteed Securities Company. He filed an amended answer admitting the corporate existence of the defendant company; denied J. J. Morey was its general manager, and that the said Morey acted in making said sale in behalf of said company. The receiver admits the failure of the Guaranteed Securities Company to comply with the California Securities Act and pleaded, as a bar to the first cause of action, subdivision 1, § 6468, Comp. Laws Utah, 1917, which section provides in substance that an action based on a liability created by statute is barred, unless the same is commenced within one year from the date the cause of action arises. The receiver denied, on information and belief, the allegations of fraud set forth in the second count in the complaint.

On the issues thus joined, the cause went to trial before the court sitting without a jury. The trial court found in favor of the plaintiff on both causes of action, and entered

judgment in accordance with the prayer of the complaint. After the entry of the judgment, the parties to the action filed a stipulation, stating that said judgment requiring the return of the two Detweiler bonds to plaintiff had not been complied with within the thirty-day period allowed by the court. Thereupon, the court entered a supplemental decree granting judgment against said defendants in the sum of $1,500, together with interest at 8 per cent per annum from February 25, 1924, together with costs in the sum of $35.20. From this decree and judgment the defendant George H. Blood, receiver for Guaranteed Securities Company, appeals.

With respect to the first cause of action it is admitted either in the pleadings, or by failure to bring here for review the lower court's decision in relation thereto, that the stock in question was sold to plaintiff in California by J. J. Morey, president of the defendant company, and without permit having been obtained from the California Securities Commission. In fact, the only controverted question of fact concerning the first cause of action is with respect to the value of the Detweiler bonds, which it is admitted were given in exchange for the fifteen shares of the capital stock of the defendant company. It is also denied in the answer that plaintiff rescinded said contract and gave proper notice of his rescission, but the evidence on this point, which is in the form of a written notice in proper form, and which it is admitted was served upon the defendants, is uncontradicted by any evidence of the defendants, and may be taken as an admitted fact. The evidence with respect to the value of the Detweiler bonds will be discussed later in connection with defendant's assignment of error on this point.

In its sixth finding of fact, the court found that plaintiff's action was not barred by the provision of subdivision 1, § 6468, Comp. Laws Utah 1917. The defendant in his fourth assignment of error assails this finding of the court. In discussing this finding, it should be kept in mind that the contract for the sale of the fifteen shares of Guaranteed Securities Company stock to the plaintiff, in

exchange for the Detweiler bonds, was made and executed entirely in the state of California, and for that reason the law of California with respect to this transaction governs. 13 C. J. 247; *U. S. Bond & Finance Corp.* v. *National Building & Loan Association of America* (Utah) 12 P. (2d) 758.

The relevant portion of the California Corporate Securities Act, namely, section 12, chap. 532, pp. 673, 679, Statutes 1917, as amended, provides:

"Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void. * * *"

Sections 13 and 14 of the same act (St. 1917, pp. 679, 680) provide the penalties for the violation of the act. The only penalty provided is that the security shall be void, and that any corporation selling securities without a permit shall be liable to a fine of $10,000, and that any officer or agent of the corporation shall be liable to both fine and imprisonment. The act is silent with respect to creating a right, or providing a remedy for one who has purchased securities declared void by the law; and were it not for the common law, the purchaser would be without redress of any kind.

Plaintiff's first cause of action is predicated on the premise that the defendant had received certain bonds in exchange for the fifteen shares of the defendant's capital stock which he should, by reason of the invalidity of the transaction, have returned to him. The statement of the cause is not in the form of any of the common-law actions, but is a mere statement of fact showing the transaction and its alleged unlawfulness.

In the case of *MacDonald* v. *Reich & Lievre,* 100 Cal. App. 736, 281 P. 106, decided in 1929, the California court passes upon the nature of the action in a case involving facts similar to the one now before the court. In that case, the plaintiff's complaint was in the form of the common count of indebtedness for money had and received within two years last past. The defendant did not plead the statute of limitations by demurrer, but it did raise the question in its answer.

It contended that the action was one based upon implied contract, and not an action for relief upon the ground of fraud or mistake, although the evidence in the case was to the effect that the plaintiff and her assignor purchased from the defendant corporation six shares of its preferred stock in the state of California at a time when the said corporation did not have a permit from the corporation commissioner to sell the same; it also was admitted that at the time of the sale, the Corporate Securities Act, requiring such a permit, and declaring the sale of stock in violation of it as void, was in full force and effect. That the law was violated, the evidence disclosed, was not discovered by the plaintiff until nearly three and a half years after the last installment was paid on the stock.

The defendant company contended that since the action was one on implied contract, the statute of limitations with respect to the time in which an action on contract must be brought would apply. The plaintiff, on the other hand, contended that the proper theory of limitation for an action of this kind is the one prescribed where the action is based on fraud or mistake; and particularly section 338 of the California Code of Civil Procedure, to wit, three years after the discovery of the fraud or mistake. In passing on this question the court declares (page 107 of 281 P., 100 Cal. App. 736):

"No doubt the form of the action is one upon an implied contract, but the criterion for determining the particular statute of limitations applicable is, not the form of the action, but the substance of it and the nature of the right, the violation of which creates the right of action. This is particularly true in those jurisdictions where common-law forms of action have been abolished. [Citing numerous cases.]

"The substance and nature of the right which gave respondent a cause of action in this case was not contract. Appellant never in fact and reality agreed to pay back the money received for the stock. The contract implied by law is merely a fiction of law and does not, therefore, go to the substance of this cause of action. A fiction of law is introduced to promote justice, not to work a wrong contrary to the real truth and substance of the thing. *Hibberd* v. *Smith*, 67 Cal. 547, at page 561, 4 P. 473, 8 P. 46, 56 Am. Rep. 726. If all the facts of

this case had been set forth in the complaint in detail instead of recourse having been had to the common count, it would readily have appeared that plaintiff's cause of action was based upon either fraud or mistake. When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid. Certificates of stock so issued by a corporation, but which were irregular or void for reasons not participated in by the stockholder, have been held to amount to a misrepresentation and fraud upon the part of the corporation officials for which the corporation is answerable." And citing cases.

The court concluded that the action, while in the form of the common count of indebtedness for money had and received, was in effect an action based upon fraud or mistake. It held, therefore, that the statute of limitations prescribed for a cause of action based upon fraud or mistake was the one applicable.

In the instant case, the cause of action having arisen in California, by reason of a void contract having been entered into and executed in that state, and its courts having determined the nature of the cause of action arising therefrom, the laws of that state as interpreted by its courts govern.

The general rule is that in respect to the limitation of actions, the law of the forum governs. 37 C. J. 729. It already having been determined that an action such as this, arising in California, is an action based upon fraud or mistake, it follows that section 6468, subd. 4, Comp. Laws Utah 1917, is the limitation statute which is applicable in the present case. Subdivision 4 of that section reads:

"An action for relief on the ground of fraud or mistake, three years; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

The defendant, appellant herein, cites *Wilson* v. *Guaranteed Securities Co.*, 73 Utah 157, 272 P. 946, a case recently decided by this court, as authority for the statement that the right to recover for violation of the "blue sky" laws

is a right created by statute and consequently the action must be brought within one year, as provided in subdivision 1, § 6468, Comp. Laws Utah 1917. Without going further into the question, it is only necessary to point out that the Utah "Blue Sky Law" is distinguishable from the California act, in that the Utah statute declares void any contract of sale made in violation of the law and expressly gives the purchaser the right to recover. This feature is absent in the California statute. The Wilson Case, supra, is not, therefore, controlling in the matter now before us as it applies only to violations of the Utah statute.

The action in the instant case was instituted on the 28th day of November, 1925, approximately a year and nine months from the date of the void transaction entered into between plaintiff and defendant. The trial court should, therefore, be sustained in finding that the first cause of action was not barred by the statute of limitations.

Defendant's first assignment of error affirms that the court's finding "that the two bonds of the Detweiler Corporation were of the value of $1500.00 at the time the transaction was consummated" was not substantiated by the evidence. An examination of the transcript reveals that the defendant Morey testified that the bonds had a face value of $1,500 and that they were received in exchange for the fifteen shares of the capital stock of the Guaranteed Securities Company, which stock had a par value of $100 per share. He further testified that he sold the two bonds to a Los Angeles Bank for the sum of $1,380. The plaintiff testified that it was agreed that the bonds were worth $1,500 and that they were taken in exchange for the stock at that price as so much cash. The testimony also showed that the bonds were paying 6 per cent and 6½ per cent interest. We think the evidence is sufficient to sustain the finding of the court as to the value of the bonds.

The defendant contends that the court also erred in allowing interest at the rate of 8 per cent per annum from the

date the transaction was entered into, namely, February 25, 1924, He further contends that inasmuch as the defendant George H. Blood was appointed receiver on the 3d day of December, 1925, that the plaintiff was not entitled to recover any interest after said date.

As to the first point, the general rule of law is that the measure of damages is the value of the property which should have been restored, taken as of the time when it was transferred, or conveyed to the defendant. Black on Rescission (2d Ed.) vol. 3, p. 1644. The moment the void contract was entered into the plaintiff had a right of action accrue to recover the consideration he had parted with or its equivalent in money.

Interest begins to run from the time of the fraudulent taking of the bonds. This rule is sustained by the great weight of authority, and particularly by this Court in the case of *Fell* v. *Union Pacific R. Co.*, 32 Utah 101, 88 P. 1003, 28 L. R. A. (N. S.) 1; 13 Ann. Cas. 1137. In the absence of any special agreement, the legal rate of interest in California would apply. No evidence of what is the legal rate of interest in California having been offered and received, the presumption is that it is the same as in Utah, namely 8 per cent. Defendant's contention that plaintiff is not entitled to interest on $1,500 after December 3, 1925, the day the receiver was appointed, we are convinced, is also untenable. In High on Receivers (4th Ed.) § 204, the principle governing is stated thus:

"The appointment of a receiver does not have the effect of changing any rights of action, or changing the contract relations existing between the original parties, against whom the receiver is appointed and their debtors * * *."

It has already been held that plaintiff had a right to recover, the gravamen of his action being fraud. The appointment of a receiver can neither increase nor decrease his rights. The authority relied on by appellant does not, in our judgment, go to the extent claimed for it. An exami-

nation of the cases cited in the note to 14a. C. J. 1014, shows that the questions involved were largely matters of administration of the insolvent estates, particularly with reference to distribution of assets.

Mr. Justice La Mar, in the case of *American Iron & Steel Mfg. Co.* v. *Seaboard Air Line Ry.* (1914) 233 U. S. 261, 34 S. Ct. 502, 504, 58 L. Ed. 949, has stated the general rule, where it is applicable, and the reason for it, in the following language:

"As a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone, or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt."

In the instant case, the question is one of substantive right and not a question of distribution. Distribution is entirely a different matter, one that is in no wise involved here. The measure of the right of Gillespie to recover is to be determined here. The manner in which he shall collect his judgment, or the extent to which he shall collect from an estate that is "custodia legis" or the standing of his claim in relation to other claims, can be, and should be, determined in the receivership proceeding itself.

The remainder of the assignments of error have to do with the second cause of action. As has already been stated,

the prayers of the two causes of action are identical. We have already affirmed the finding of the court on the issues presented in the first cause of action, and the conclusions and judgment and decree entered thereon. It, therefore, becomes unnecessary to discuss and rule on the assignments with respect to the second cause of action.

The judgment of the trial court is affirmed, with costs on appeal to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.